UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-CV-21906-GAYLES/Turnoff

PAULETTE MAUREEN ROGERS,

     Plaintiff,

v.

NANCY A. BERRYHILL,
Commissioner of Social Security,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before the Court upon the parties' cross-motions for summary judgment. (ECF No. 24, 25). This case was referred to the undersigned by the Clerk of Courts for ruling on all pre-trial, non-dispositive matters. (ECF No. 3). Upon review of the administrative record, including a transcript of the administrative proceedings, the exhibits, the filings of the parties, the applicable law, and being otherwise duly advised in the premises, the undersigned makes the following findings of fact and conclusions of law.

### Procedural Background

On October 1, 2012, Plaintiff Paulette Maureen Rogers applied for Disability Insurance Benefits (DIB), and Supplemental Security Income Disability benefits (SSI), under the Social Security Act, alleging disability from September 17, 2012. [Tr. 219-40].[1] The applications were

---

[1]References are to the record of the administrative proceedings, which was filed at Docket Entry No. 15 **(ECF No. 15)**, and shall be designated as: [Tr. Page Number].

denied initially and upon reconsideration. [Tr. 62-154, 158-67, 169-70]. Thereafter, Rogers requested an administrative hearing, which was held before Administrative Law Judge ("ALJ") Salena Bowman-Davis, on September 5, 2014. [Tr. 41-61, 171]. Plaintiff was represented by counsel and testified. A vocational expert ("VE"), Lisa Goudy, also testified. On December 18, 2014, the ALJ found that Rogers was not disabled. [Tr. 21-31]. The Appeals Council denied Rogers' request for review on March 24, 2016. [Tr. 1-5]. This appeal followed.

## Background

Rogers was 51 years old as of the date of the administrative decision. [Tr. 45, 319]. She has a college education and past relevant work as a secretary. [Tr. 47-48, 292]. She alleged inability to work since September 27, 2012, due to trauma from a fall, depression, right shoulder surgery, high blood pressure, and diabetes. [Tr. 47, 291].

Prior to the alleged onset date, in November 2011, Rogers injured her face and right wrist in a slip-and-fall accident. [Tr. 521, 569]. As a result, she experienced pain in the neck, lower back, right wrist, and right shoulder. Id. Rogers underwent a right shoulder arthroscopy and rotator cuff repair with orthopedist Nile R. Lestrange, M.D., in March 2012, which resulted in some improvement. [Tr. 528, 530]. Due to continued stiffness and pain, she underwent a right shoulder manipulation, under anesthesia, for release of capsulitis, in July 2012. [Tr. 539, 541, 549]. In August 2012, Dr. Lestrange gave Rogers a final disability rating of 7% permanent physical impairment of the body as a whole for the right shoulder, 3% permanent physical impairment of the body as a whole for the cervical spine, and 6 to 7% permanent physical impairment of the body as a whole for the lumbar spine, half of which existed prior to the accident. [Tr. 545-46].

At a follow-up visit on September 28, 2012, Dr. Lestrange observed increased pain with range of motion testing and abnormal straight leg raising. [Tr. 547-48]. Rogers claimed a pain level of 10 on a scale of 1 to 10. [Tr. 547]. Dr. Lestrange prescribed pain medication and referred her to Lawrence M. Alexander, M.D., for further evaluation of the cervical spine. [Tr. 548].

Rogers visited Dr. Alexander in October 2012, complaining of right-side shoulder and neck pain and significant low back pain. [Tr. 549-51]. Upon physical examination, Dr. Alexander observed that Rogers had 5/5 strength through the upper and lower extremities, tenderness along the supraspinous musculature of the right shoulder and low back, and some impingement signs involving the right shoulder. [Tr. 551]. He recommended a cervical epidural injection for the neck pain, as well as an L3-4 transforaminal lumbar interbody fusion for the back and leg pain. [Tr. 551]. Rogers underwent same in November 2012. [Tr. 560-62].

On January 8, 2013, Rogers reported to Dr. Alexander that, although her leg pain was better, her back pain was not. [Tr. 804]. At the time, she was undergoing rigorous physical therapy. Id. Dr. Alexander observed that Rogers had 5/5 strength and intact sensibility in the lower extremities, and that she may have been over-exuberant with physical therapy. [Tr. 804]. He postponed further therapy and scheduled to see her again in approximately one month. [Tr. 804].

Two days later, on January 10, 2013, Dr. Alexander completed a Physician's Report for the Florida Retirement System in support of Rogers' application for disability retirement identifying her primary disabling condition as lumbar disc herniations, and the secondary condition as status post transforaminal lumbar interbody fusion to the L3 and L4 levels. [Tr. 592]. Dr. Alexander noted that Rogers had severe limitation of functional capacity and was permanently incapable of any kind of work. Id. He further noted that Rogers' condition had not yet stabilized, and that she had not yet

reached maximum medical improvement. Id.

Rogers saw Dr. Alexander again on February 5, 2013. [Tr. 819]. She reported continuing back and leg pain, but was doing better overall. Id. Dr. Alexander noted that her lower extremities were neurovascularly intact, that she had 5/5 strength, and that her straight-leg raise was negative. [Tr. 819]. Rogers returned on April 9, 2013, with continuing back pain made worse by bending, lifting, and twisting. [Tr. 820]. Dr. Alexander noted that Rogers had 5/5 strength and intact sensibility in the lower extremities. Id. He recommended that she continue with activities, as tolerated, and work on a home core-strengthening program. Id. At a follow-up visit on July 9, 2013, she reported back pain that was tolerable. [Tr. 821]. Dr. Alexander observed that Rogers was doing better and recommended that she continue with her exercise program. Id.

Rogers saw Dr. Alexander again on September 3, 2013, after having visited the emergency room with severe right-side low back pain after moving objects around her bathroom. [Tr. 822]. Dr. Alexander recommended muscle relaxants, anti-inflammatory medication, and Percocet for symptomatic relief opining that Rogers would "get better uneventfully." Id. Rogers returned to Dr. Alexander in January 2014, reporting continued back pain made worse by bending, lifting, and twisting, but no lower extremity symptoms. [Tr. 823]. Dr. Alexander opined that Rogers was limited to lifting no more than 10 lbs., standing no more than 30 minutes at a time, and sitting no more than 45 minutes at a time. Id. In June 2014, Dr. Alexander recommended that Rogers continue activities, as tolerated, and refilled her medications. [Tr. 930].

Rogers was also under the care of neurologist Barry J. Cutler, M.D. [Tr. 567-68, 579-84]. In October 2012, Dr. Cutler observed that Rogers' back had a good range of motion and no tender areas. [Tr. 567]. Rogers saw Dr. Cutler again in December 2012 and reported worsening headaches,

for which he prescribed medications. [Tr. 579-80].

Beginning in June 2012, Rogers received mental health treatment from psychiatrist Joseph W. Poitier, M.D. [Tr. 519-20]. On September 27, 2012, Rogers reported that she was depressed. [Tr. 515]. Dr. Poitier diagnosed major depressive disorder, moderate and recurring, and assigned a global assessment of functioning ("GAF") score of 55. [Tr. 515]. He continued her medication regimen. [Tr. 515]. Rogers treated with Dr. Poitier on a regular basis through June 2014. [Tr. 602-11, 854-61, 899, 937-40]. Throughout this time, she continued to complain of depression, and Dr. Poitier's observations remained largely unchanged. [Tr. 602-11, 854-61, 899, 937-40].

## Medical Examinations

In June 2014, Oscar Farmati, M.D., a medical expert, responded to medical interrogatories upon request of the ALJ. [Tr. 907, 920-28]. He opined that Rogers' impairments did not meet or equal any impairment described in the listings. [Tr. 921]. Rogers could lift and carry up to 10 lbs. frequently; could sit for 2 hours at a time and 6 hours total in an 8-hour workday; could stand for 30 minutes at a time and 1 hour total in an 8-hour workday; and could walk for 30 minutes at a time and 1 hour total in an 8-hour workday. [Tr. 923-24]. He opined that Rogers could frequently reach, handle, feel, push, and pull with her right hand, continuously use her left hand, and occasionally operate foot controls bilaterally [Tr. 925], could never climb ladders or scaffolds or crawl and could occasionally perform other postural activities [Tr. 926], but could never tolerate exposure to unprotected heights or commercial driving, occasionally tolerate exposure to humidity/wetness, extreme cold and heat, and vibrations, and frequently tolerate exposure to moving mechanical parts. [Tr. 927].

## Hearing Testimony

Rogers testified that she retired from her position as a secretary with Miami-Dade County, in 2012, after her fall and due to depression. [Tr. 47-48]. She can dress herself but needs assistance with anything behind her body. [Tr. 50]. She cannot bend over or reach overhead. [Tr. 52, 54]. She drives only when necessary. [Tr. 50].

Rogers testified that, while the prescription medications improve her severe pain, they cause her drowsiness. [Tr. 52]. By the same token, the psychiatric medications help her mood but make her very calm. [Tr. 55]. However, if she does not take her medications, she is prone to behavioral outbursts and has trouble concentrating. [Tr. 55].

According to the VE's testimony, Rogers' previous work as a secretary was a sedentary, SVP 6, skilled listing in the DOT. [Tr. 58]. The ALJ presented the VE with the following hypothetical: lift/carry, push/pull no more than 10 lbs frequently; sit for 6 hours with normal breaks; postural adjustments at workstation; stand/walk up to 1 hour for 30 minutes at a time; no overhead reaching on the right; no limitations with use of hands on the left; occasional operation of foot controls bilaterally; occasional climbing of stairs/ramps; no climbing of ladders/scaffolds; occasional balancing, stooping, kneeling, and crouching; no crawling; avoid exposure to unprotected heights; no commercial driving; occasional exposure to humidity/wetness, dust, odors, fumes, pulmonary irritants, extreme temperatures, and heavy vibrations; no high production quotas or fast-paced work environment; no more than superficial interaction with the public. [Tr. 58-59]. With all the limitations stated by the ALJ, the VE found that Rogers could still perform her past work. [Tr. 59]. However, when the ALJ inquired if being off-task 10% of the time and when claimant's counsel asked if two or three absences a month would present a problem for sustaining employment, the VE

noted that it would be difficult to sustain employment. [Tr. 59-61].

## Applicable Law

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(s)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making a claimant unable to do her previous work, or any other substantial gainful activity existing in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505; 404-1511.

The SSA regulations provide a five-step sequential evaluation process for determining whether an individual is disabled. 20 C.F.R. §§ 404.1520; 416. 920. First, the ALJ must determine if the claimant is engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b); 416.920(b). If so, then the claimant is not disabled, and the inquiry ends. 20 C.F.R. § 404.1520(b).

Otherwise, the analysis proceeds to the second step where the ALJ must determine whether the claimant has a severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c); 416.920(c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.1521. Absent such a finding, a claimant is not disabled, thus ending the inquiry. Otherwise, the analysis proceeds to the third step. The burden is on the claimant to provide substantial evidence establishing an impairment, whether physical or mental, that has more than a minimal effect on her ability to perform basic work. Bridges v. Bowen, 815 F.2d 622, 625-26 (11th Cir. 1987).

At step three, the ALJ must determine whether the claimant's impairments meet or equal an impairment listed in 20 C.F.R. § 404.1520(d), Subpart P, Appendix I. 20 C.F.R. §§ 404.1520(d);

404.1525; 404.1526; 416.920(d). If so, the claimant is disabled. Certain impairments are so severe that, whether considered alone or in conjunction with other impairments, if established, require a finding of disability without further inquiry. Gibson v. Heckler, 762 F.2d 1516, 1518, n.1 (11th Cir. 1985). If the claimant's impairment does not meet or equal a listed impairment, then the analysis proceeds to the next step.

Prior to considering the fourth step, the ALJ must determine the claimant's residual functional capacity ("RFC") to perform past relevant work, based on all the evidence of record. 20 C.F.R. §§ 404.1520(e); 416.920(e). An individual's RFC is the remaining ability to do mental and physical work activities on a sustained basis despite impairment limitations. 20 C.F.R. § 404.1545(a). In making this determination, the ALJ must consider all of the claimant's impairments. 20 C.F.R. §§ 404.1520(e); 404.1545.

Then, at the fourth step, the ALJ must assess whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(f). If the claimant's impairments do not prevent her from doing past relevant work, then she is not disabled. Id. The claimant bears the burden of proving that her impairments preclude any past relevant work. 20 C.F.R. §§ 404.1512(c); 416.912(c). The inability to perform previous work relates to the type of work performed, not merely a specific or prior job. Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir. 1986). If the claimant cannot perform past relevant work, then a *prima facie* case of disability is established, and the analysis proceeds to the final step. 20 C.F.R. §§ 404.1520(e); 416.920(e).

In step five, the ALJ must determine whether the claimant is able to do any other work in light of the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g); 416.920(g). If the claimant is able to do other work, then she is not disabled. If the claimant's

impairments prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. §§ 404.1520(f); 416.920(f). At this point, the burden shifts to the Social Security Administration to show that claimant can do other work that exists in significant numbers in the national economy given the RFC, age, education and work experience. 20 C.F.R. §§ 404.1512(g); 404.1560(c). The burden rests with the claimant through the first four steps of the analysis, and shifts to the Commissioner only at step five. See, Audler v. Astrue, 501 F.3d 446, 448 (5th Cir. 2007).

## Summary of ALJ's Findings

The ALJ found that Rogers had not engaged in substantial gainful activity since the date of onset, September 17, 2012. [Tr. 23]. At step two, the ALJ found that Rogers had the severe impairments of status post back surgery, right rotator cuff injury, obesity, and mood disorder. Id. The ALJ further found that Rogers' diabetes mellitus, hypertension, and hypothyroidism were not severe. [Tr. 23-24]. However, the ALJ found that, during the relevant period, Rogers did not have an impairment, or combination of impairments, that met, or medically equaled, one of the listed impairments in 20 C.F.R. part 404, Subpart P, Appendix 1. [Tr. 24].

Specifically, the ALJ considered the musculoskeletal impairments under section 1.00 and found that Rogers' impairments did not meet or medically equal the listing. [Tr. 24]. With respect to obesity, the ALJ found that it did not meet or medically equal listing SSR 02-1p. Notwithstanding, the ALJ accounted for the effects of obesity by limiting the partial range of light work. [Tr. 25]. With respect to Rogers' mental impairment, the ALJ found that she did not meet or medically equal listing 12.04. In so doing, the ALJ considered the "paragraph B" criteria, which requires at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated

episodes of decompensation, each of extended duration. The ALJ found that Rogers had mild restriction in activities of daily living, mild difficulties in social functioning, moderate difficulties with respect to concentration, persistence or pace, and no episodes of decompensation. [Tr. 25-26]. The ALJ also considered "paragraph C" criteria which requires repeated episodes of decompensation, residual disease process which would cause claimant decompensation when subjected to minimally increased mental demands or change in environment, or a history of one or more years' inability to function outside of a highly supportive living environment. [Tr. 26].

Next, upon consideration of all the symptoms and the medical record evidence, the ALJ determined that Rogers had the RFC to perform a reduced range of light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), in that she could lift, carry, push, and pull no more than 10 lbs. frequently; sit for 6 hours, with normal breaks; stand up to one hour and walk up to one hour, no more than 30 minutes at one time, for 2 hours total; and required postural adjustments at the workstation. [Tr. 27]. The ALJ further found that Rogers could not perform overhead reaching with her right hand but had no limitation with her left hand; she could occasionally operate foot controls bilaterally; she could occasionally climb ramps and stairs, but never climb ladders or scaffolds; she could occasionally stoop, balance, and crouch, but never crawl; avoid exposure to heights, commercial driving, humidity, wetness, and concentrated exposure to dust, fumes, and pulmonary irritants; occasional exposure to extreme temperatures and heavy vibrations; no high production quotas or work in a fast-paced environment; and no more than superficial interaction with the public. [Tr. 27].

At step four, the ALJ determined that Rogers was capable of performing her past relevant work as a secretary, as actually and generally performed. [Tr. 30-31]. Accordingly, the ALJ

determined that Rogers was not disabled from September 17, 2012, through December 18, 2014, the date of the administrative decision. [Tr. 31].

## Standard of Review

Judicial review of factual findings in disability cases is limited to determining whether the ALJ's findings were based upon substantial evidence and whether the correct legal standards were applied. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999); 42 U.S.C. § 405(g). When supported by substantial evidence, the Commissioner's findings are conclusive. Richardson, 402 U.S. at 401. "Substantial evidence" is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable person would accept as adequate to support a conclusion. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). In determining whether substantial evidence exists, "[t]he district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [ALJ's] decision." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). The reviewing court must also be satisfied that the ALJ's decision correctly applied the legal standards. Bridges, 815 F.2d at 624.

In so doing, the court may not re-weigh evidence or substitute its judgment for that of the ALJ, even if the court finds that the weight of the evidence is against the SSA's decision. Baker on Behalf of Baker v. Sullivan, 880 F.2d 319, 321 (11th Cir. 1989); Martin v. Sullivan, 894 F.2d 1520 (11th Cir. 1990). In fact, even if the court finds that the evidence preponderates against the ALJ's decision, or if the reviewer would have reached a contrary result, the court must affirm, so long as the decision is supported by substantial evidence. Barnes v. Sullivan, 932 F.2d 1356, 1358 (11thCir. 1991); 42 U.S.C. § 405(g). In short, the court is not permitted to re-weigh evidence or decide the

facts anew. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).

"The restrictive standard of review is applicable only to findings of fact and 'no similar presumption of validity attaches to the [ALJ's] conclusions of law, including determination of the proper standard to be applied in reviewing claims.'" Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986)). Failure by the ALJ to apply the correct legal standards or to provide the reviewing court with sufficient reasoning to determine that the correct legal principles were followed are grounds for reversal. Cornelius v. Sullivan, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## Discussion

To be eligible for disability benefits, Rogers bears the burden of proving not only that she had medically determinable impairments, but that they were so severe that they prevented her from engaging in any substantial gainful activity in the national economy. Barnhart v. Walton, 535 U.S. 212, 222-24 (2002); Heckler v. Campbell, 461 U.S. 458, 460 (1983). "Severity is measured based on its effect upon ability to work." Manzo v. Comm'r of Soc. Sec., 408 F. App'x 265, 269 (11th Cir. 2011). An impairment or combination of impairments is severe if it significantly limits an individual's ability to perform basic work activities. C.F.R. § 404.1521; Brady v. Heckler, 724 F.2d 914, 919 (11th Cir. 1984). An impairment is not severe if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work irrespective of age, education or work experience. Id. at 920.

By way of summary, Rogers argued that: (1) the ALJ failed to properly assess opinion evidence of record; (2) the ALJ's RFC assessment was not supported by substantial evidence; and (3) the ALJ failed to properly assess Rogers' alleged symptoms and limitations.

## I. Medical Opinion Evidence.

Rogers argued that the ALJ failed to articulate what weight she accorded the opinions of Drs. Nile Lestrange, John Williams, Joseph Poitier, Lawrence Alexander, and Barry Cutler.

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of the claimant's impairment(s), including the claimant's symptoms, diagnosis and prognosis, what the claimant can still do despite impairment(s), and the claimant's physical or mental restrictions." Winschel v. Comm'r of Social Sec., 631 F.3d 1176, 1178-79 (11th Cir. 2011). Whenever a physician offers a medical opinion, the ALJ is required "to state with particularity the weight given to it and the reasons therefor." Tillman v. Comm'r of Soc. Sec., No. 6:12-cv-969-Orl-22DAB, 2013 WL 4014979, * 3 (M.D. Fla. Aug. 6, 2013); Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987). Absent such a statement, a reviewing court cannot determine whether the ultimate decision is supported by substantial evidence. Hudson v. Heckler, 755 F.2d 781, 786 (11th Cir. 1985). When the ALJ fails to "state with at least some measure of clarity the grounds for his decision, [a court must] decline to affirm simply because some rationale might have supported the ALJ's conclusion." Winschel, 631 F.3d at 1179.

"Social security regulations require an ALJ evaluating medical opinion evidence to consider a variety of factors, including the examining and treatment relationships, the specialization of the person giving the opinion, and how well the record supports the opinion in question." McNamee v. Soc. Sec. Admin., 164 Fed. App'x 919, 923 (11th Cir. 2006) (*citing*, 20 C.F.R. § 404.1527(d)(1)-(6)). "Generally, the opinions of examining physicians are given more weight than those of non-examining physicians, treating physicians are given more weight than those of physicians who examine but do not treat, and the opinions of specialists are given more weight on

issues within the area of expertise than those of non-specialists." Id. (*citing*, 20 C.F.R. § 404.1527(d)(1), (2) & (5)).

Although the ALJ is required to consider every medical opinion, 20 C.F.R. §§ 404.1527(d), 416.927(d), "the ALJ may reject any medical opinion if the evidence supports a contrary conclusion." Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985). "A treating physician's report 'may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory.'" Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004) (*quoting*, Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991)). Additionally, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [the court] to conclude that [the ALJ] considered her medical condition as a whole.'" Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005).

First, the Commissioner argued that the evidence relied upon by Rogers consisted of treatment notes, not medical opinions, such that the ALJ did not need to accord them specific weight. Under Winschel, Rogers was required to show that the medical records she identified contained medical opinions. 631 F.3d at 1179. The record shows that most of the medical records qualify. At least one doctor, Dr. Alexander, opined that Rogers was unable to work due to her impairments, which the ALJ noted was inconsistent with contemporaneous treatment notes. [Tr. 28].

Rogers argued that, even though Dr. Lestrange provided an opinion regarding Rogers' permanent physical impairment level, the ALJ never discussed it. [Tr. 545-46]. Instead, she

summarized Dr. Lestrange's treatment in only four lines of text. [Tr. 28]. With respect to Dr. Cutler,[2] Rogers argued that the ALJ failed to mention that she presented with complaints of headaches severe enough to require treatment with Lidocaine and Depo-Medrol. Next, Rogers pointed to the symptoms that, in June 2012, she reported to Dr. Williams with respect to her right shoulder and an emergency room visit due to anxiety. [Tr. 270].

As to Dr. Poitier, Rogers argued that the ALJ failed to assign weight to his opinion regarding her functional capacity that she had a GAF[3] score of 55. Rogers argued further that the ALJ selectively cited to benign findings instead of presenting a fair characterization of the record, as Dr. Poitier had concluded that Rogers was more limited than the ALJ portrayed in the decision.

Finally, Dr. Alexander noted that Rogers' condition had not yet stabilized, that she had not yet reached maximum medical improvement, and that she had severe limitation of functional capacity; was permanently incapable of any kind of work; and was totally and permanently disabled from gainful employment. [Tr. 590-92]. While the ALJ argued that Dr. Alexander's opinions were inconsistent with the treatment notes, she did not articulate the weight accorded to his opinion. [Tr. 27-30].

---

[2]Dr. Cutler was not mentioned by name in the Decision, but the ALJ referenced his findings in connection with Sunrise Medical Group. [Tr. 28].

[3]The GAF scale, is a numeric scale that mental health practitioners use to rate the occupational, psychological and social functioning of adults. American Psychiatric Association, Diagnostic and Statistical Manual fo Mental Disorders 32-35 (Text Revision, 4th Ed. 2000). Not only has the GAF scale been abandoned by the American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (DSM-5) (5th Ed. 2013), at p. 16, but the Commissioner has declined to endorse GAF scores for use in the disability programs, because these scores have no 'direct correlation to the severity requirements of the mental disorders listings.'" Newsome ex rel. Bell v. Barnhart, 444 F. Supp. 2d 1195, 1198 (D. Ala. 2006) (citations omitted); Wind v. Barnhart, 133 Fed. App'x 684, 692 n. 5 (11th Cir. 2005).

Next, the Commissioner argued that any error in failing to assign weight to an opinion that was contradicted by other evidence was harmless. Tillman v. Comm'r, Soc. Sec. Admin., 559 F. App'x 975 (11th Cir. 2014) (holding that failure to explicitly assign weight to doctor's opinion was not error where doctor's records and other evidence contradicted those opinions). For example, although the ALJ did not articulate the explicit weight accorded to Dr. Alexander's opinion, she found that it was inconsistent with the treatment notes. [Tr. 27-30]. Notwithstanding, as the Eleventh Circuit has noted repeatedly, an ALJ's failure to state with particularity the weight given to each medical opinion is reversible error. Caldwell v. Barnhart, 261 Fed. App'x 188, 190 (11th Cir. 2008); McClurkin v. Soc. Sec. Admin., 625 Fed. App'x 960, 962-3 (11th Cir. 2015) ("Because the ALJ failed to state with particularity the weight assigned to [the medical] opinion or the reasons why he may have discarded her opinion, we vacate and remand to the district court with instructions to return the case to the Commissioner for proceedings consistent with this opinion."). While "[i]n limited circumstances, the failure of an ALJ to state the weight given to the medical opinion of a physician may be harmless error," Ostos v. Astrue, No. 11-23559-CIV, 2012 WL 6182886, at *13 (S.D. Fla. Nov. 20, 2012), it is unlikely. Ocasio v. Comm. of Social Security, Case No: 6:14-cv-1635-Orl-GJK, 2016 WL 455459, * 3 (M.D. Fla. Feb. 5, 2016); Estrella v. Colvin, No. 15-22890-Civ-Moore/McAliley, 2016 WL 7507881, at *6 (S.D. Fla. Jul. 27, 2016).

Here, because the ALJ's decision does not provide the Court with sufficient information to evaluate whether the ALJ applied the correct legal analysis in weighing each opinion, and whether the ALJ's determinations were supported by substantial evidence, the Court must remand to the ALJ for further proceedings. Perez v. Comm'r of Soc. Sec., No. 6:06-cv-1648-Orl-19KRS, 2008 WL 191036, * 5 (M.D. Fla. Jan. 22, 2008); Estrella, 2016 WL 7507881, at *6. "Even if it is possible that

the ALJ considered and rejected medical opinions, 'without clearly articulated grounds for such a rejection, we cannot determine whether the ALJ's conclusions were rational and supported by substantial evidence.'" Himes v. Comm'r of Soc. Sec., 585 Fed. App'x 758, 765 (11th Cir. 2014) (quoting Winschel, 631 F.3d at 1179). On remand, the ALJ should explicitly consider, discuss, and weigh the medical opinions.

## II. RFC Determination.

Rogers next argued that the ALJ's RFC assessment was not supported by substantial evidence. The RFC is an assessment by the ALJ of a claimant's ability to work despite her impairments. Lewis, 125 F.3d at 1440. Pursuant to SSR 96-8p, an RFC assessment must be based on all of the relevant evidence of record, including activities of daily living, lay evidence, recorded observations, and medical source statements. The focus of the RFC is on doctors' evaluations of the claimant's condition and the medical consequences thereof. Tillman, 2013 WL 4014979, at *3.

Rogers argued that the ALJ failed to account for her moderate difficulties with respect to concentration, persistence, and pace; made no mention of the treating psychiatrist's findings on exam or his consistently-assessed GAF scores, and attributed deficits in concentration to pain allegations alone, rather than to the combination of factors, which include pain and psychiatric symptomatology. The Commissioner argued that Rogers had not proven that her mental impairments imposed limitations beyond those set forth in the RFC, and that limitations similar to, or less restrictive than, those noted by the ALJ in Rogers' case have been found to sufficiently account for a rating of moderate difficulties in concentration, persistence, or pace in the Eleventh Circuit. Carpenter v. Comm'r of Soc. Sec., 614 Fed. App'x 482, 490 (11th Cir. 2015).

Given the Court's finding that remand is warranted based on the failure to articulate the

weight accorded to medical opinions, and given that the findings could change on remand, it is unnecessary to address Rogers' objection regarding the Commissioner's RFC assessment. Jackson, 801 F.2d at 1294 n.2; Pitaluga v. Colvin, No. 14-24255-CIV, 2016 WL 1252657, at \*6 (S.D. Fla. Mar. 31, 2016).

## III.  Credibility.

Finally, Rogers argued that the ALJ did not properly assess her alleged symptoms and limitations in assessing her credibility. Pursuant to SSR 16-3p, to determine whether an individual is disabled, the ALJ must consider all of the symptoms, including pain, and the extent to which these can reasonably be accepted as consistent with the objective medical and other evidence of record.

When a plaintiff attempts to prove disability based on his subjective symptoms, she must show "evidence of an underlying medical condition" and either "objective medical evidence confirming the severity of the alleged pain or symptoms arising from that condition," or evidence that the "objectively-determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain." Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (internal citation omitted). Then, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent that these limit the claimant's functioning. The responsibility to weigh the claimant's complaints about his symptoms against the record falls on the ALJ alone. 20 C.F.R. § 404.1529(a). Clearly articulated credibility findings that are supported by substantial evidence are not to be disturbed by a reviewing court. Foote, 67 F.3d at 1562.

"When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and

intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." Davis v. Astrue, 287 Fed. App'x 748, 760 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1529(c)(3)(i)(vi)).

If the statements about the intensity, persistence, and limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the statements based on consideration of the entire record. If the ALJ decides not to credit such testimony, she must articulate explicit and adequate reasons for doing so. Hale v. Bowen, 831 F. 2d 1007, 1011 (11th Cir. 1987). Thus, "the ALJ's discretionary power to determine the credibility of testimony is limited by his obligation to place on the record explicit and adequate reasons for rejecting that testimony." Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988). A lack of an explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). That determination, however, "may be affected by the lack of a fully developed record, and should be revisited on remand." Berrios v. Comm'r of Soc. Sec., No. 14-23860-CIV-Simonton, 2016 WL 5661634, *15 (S.D. Fla. Sept. 30, 2016).

Here, the ALJ found that Rogers' subjective complaints regarding her symptoms and their effect on her ability to work were not entirely credible, in part, because her activities of daily living were not as restricted as expected given her complaints. [Tr. 30]. Given the Court's finding that the ALJ erred in failing to weigh the medical opinion evidence, the Court will not reach this issue. Although the ALJ followed the proper procedure regarding her credibility determination, the ALJ's consideration of the additional medical opinion evidence on remand, as discussed above, will require

the ALJ to re-evaluate Rogers' credibility based upon the entirety of the record. Therefore, the Court finds that the case should be remanded for the ALJ to make a new credibility determination of Rogers based upon a review of the entire record.

## Conclusion

Based upon the foregoing, the ALJ's decision was not supported by substantial evidence. Therefore, the ALJ's decision should be reversed and remanded. On remand, the ALJ should reweigh the medical opinions of record, state with particularity the weight to be given to each opinion and the reasons therefor, as addressed in this report and recommendation. The ALJ should then consider the full medical record, as properly weighted, as well as the other evidence in the record to evaluate Rogers' credibility and determine the RFC, and explicitly state the basis for that determination. Applying the revised RFC, the ALJ should proceed to step five of the required analysis, to make a final determination of Rogers' eligibility for disability benefits.

## Recommendation

Accordingly, it is hereby **RESPECTFULLY RECOMMENDED** that Plaintiff's Motion for Summary Judgment (ECF No. 24) be **GRANTED**, and that Defendant's Motion for Summary Judgment (ECF No. 25) be **DENIED**, and the matter remanded for proceedings consistent with this report and recommendation.

Pursuant to S.D. Fla. Magistrate Rule 4(b), the parties may serve and file written objections to this Recommendation with the Honorable Darrin P. Gayles, United States District Court Judge for the Southern District of Florida, within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file timely objections shall bar the parties from attacking on appeal any factual findings contained herein. RTC v. Hallmark Builders, Inc., 996 F.2d 1144

(11th Cir. 1993); <u>LoConte v. Dugger</u>, 847 F.2d 745 (11th Cir. 1988).

**RESPECTFULLY RECOMMENDED** in Chambers at Miami, Florida, this ___ day of

November 2017.

**WILLIAM C. TURNOFF**
**UNITED STATES MAGISTRATE JUDGE**